IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

SUANNE M. CLAYTON                   :
                                    :
          Plaintiff,                :
                                    :
v.                                  :        CIVIL ACTION NO.
                                    :        2:12-CV-237-WCO-JCF
DR. JAMES CRAIG; SOUTHERN           :
HEALTH CORP. OF ELLIJAY, INC.       :
d/b/a NORTH GEORGIA MEDICAL         :
CENTER; and SUNLINK HEALTH          :
SYSTEMS, INC.,                      :
                                    :
          Defendants.               :

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Suanne Clayton is a nurse who worked for Defendant Southern

Health Corporation of Ellijay, Inc., d/b/a North Georgia Medical Center ("Southern

Health") with Defendant Dr. James Craig.[1]  Defendant SunLink Health Systems,

Inc. ("SunLink") is Southern Health's parent company.

Plaintiff alleges that while she worked with Dr. Craig, he was involved in an

open sexual relationship with the office's nurse supervisor, Meredith Holmes.

(Doc. 11 at ¶ 23).  She further alleges that Ms. Holmes was hired to supervise other

nurses even though she had no nursing license and that her sexual relationship with

---

[1] These facts are set forth in Plaintiff's First Amended Complaint.  (Doc. 11).

Dr. Craig secured her this supervisory position. (*Id.* at ¶ 21). Plaintiff claims she was required to cover patients for Dr. Craig while he had sex with Ms. Holmes at the office during work hours. (*Id.* at ¶ 23).

Plaintiff also asserts that she was subjected to pervasive sexual comments, innuendo, and lewd gestures while working at Dr. Craig's office. (*Id.* at ¶ 22). She claims Dr. Craig rubbed Ms. Holmes between the legs and engaged in other sexual touching in Plaintiff's presence. (*Id.* at 23). She alleges Dr. Craig showed off pictures of himself "dressed only in his underwear" and that he displayed panties belonging to Ms. Holmes that were inscribed with the phrase "I love Dr. Craig." (*Id.* at ¶ 23). Dr. Craig also allegedly called her a whore. (*Id.*). And, finally, Dr. Craig purportedly "teased Plaintiff about being a prude, and suggested that she should be open to having a sexual affair despite being married." (*Id.*).

Plaintiff maintains that she objected to Holmes and Craig, and when they did not respond, she shared her concerns with Defendant Southern Health. (*Id.* at ¶ 25). In response to Plaintiff's complaints, Dr. Craig then fabricated a story that Plaintiff had been involved in an affair with a patient, which Southern Health adopted. (*Id.* at 28). At that point Southern Health terminated Plaintiff after having failed to investigate the situation properly. (*Id.* at ¶ 30).

This case is currently before the Court on motions to dismiss filed by Craig (Doc. 5) and SunLink (Doc. 6), along with Defendant Southern Health's partial

motion to dismiss for failure to state a claim (Doc. 7) and motion for a more definite statement (Doc. 8). After Plaintiff filed her Amended Complaint (Doc. 11), each Defendant filed a motion to dismiss the Amended Complaint, (Docs. 17, 18, 19). Defendants have also filed a joint motion to stay discovery. (Doc. 21). Because Plaintiff's Amended Complaint supersedes her original Complaint, it is **RECOMMENDED** that Defendants Dr. James Craig and SunLink's motions to dismiss (Docs. 5, 6) and Southern Health's partial motion to dismiss for failure to state a claim (Doc. 7) and its motion for a more definite statement (Doc. 8) be **DENIED as moot**.

As is explained below, it is further **RECOMMENDED** that the motions to dismiss Plaintiff's Amended Complaint (Docs. 17, 18, 19) be **GRANTED in part** and **DENIED in part** such that the only claims which may proceed are Plaintiff's Title VII claims (Counts I, II and III) against Southern Health, her negligent hiring, supervision, and retention claims against Southern Health that are based on actions taken by Dr. Craig, (Count V),[2] her claim of tortious interference asserted against Dr. Craig based on Dr. Craig's alleged interference with Plaintiff's relationship with Southern Health[3] (Count VI), and her defamation claims (Count VII) against

_____

[2] Defendant Southern Health did not move to dismiss Plaintiff's Title VII claims for sexual discrimination and retaliation or her negligent hiring, supervision and retention claims to the extent those are based on the hiring, retention, and supervision of Dr. Craig by Southern Health.

[3] As explained below, Dr. Craig did not move to dismiss Plaintiff's tortious

Defendants Craig and Southern Health.  Defendants' motion to stay discovery (Doc. 21) is **GRANTED**, and discovery is **STAYED** until after the District Judge rules upon the pending motions to dismiss.

## PROCEDURAL BACKGROUND

On October 9, 2012, Plaintiff filed her original Complaint in which she alleged that Defendants Craig, Southern Health, and SunLink discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*  ("Title VII").  (*See* Doc. 1 at ¶¶ 28, 41). Plaintiff also brings state law claims against all Defendants for sexual harassment, retaliatory termination, negligent hiring, negligent supervision, tortious interference, slander, libel, and defamation.  (*Id.* at ¶ 2).

Rather than answer the complaint, Dr. Craig and SunLink filed motions to dismiss on December 10, 2012 (Docs. 5, 6) seeking to dismiss Plaintiff's original Complaint pursuant to FED. R. CIV. P. 12 (b)(6).  That same day, Southern Health filed a partial motion to dismiss for failure to state a claim (Doc. 7) and a motion for a more definite statement (Doc. 8).  On December 24, 2012, Plaintiff filed an Amended Complaint (Doc. 11) in which she added a claim for intentional infliction

---

interference claim to the extent that it rests on Dr. Craig's alleged interference with Plaintiff's relationship with Southern Health, but he did move to dismiss that claim to the extent that it is based on his alleged interference with Plaintiff's employment opportunities and business relationships with the general public.  (*See* Doc. 17-1 at 7-10).

of emotional distress against all Defendants, and she also filed responses in opposition to all of the Defendants' motions to dismiss and Southern Health's motion for a more definite statement.  (Docs. 12, 13, 14, 15).

On January 7, 2013, all Defendants filed motions to dismiss (Docs. 17, 18, 19) challenges aspects of the Amended Complaint.  In addition, Defendants jointly filed a motion to stay discovery pending the resolution of Defendants' motions to dismiss.  (Doc. 21).  Plaintiff filed responses in opposition to all of the Defendants' second round of motions on January 22, 2013 (Docs. 22, 23, 24, 25), and Defendants' jointly filed a reply on February 5, 2013 (Doc. 26).

## I.    Motions Directed Towards The Original Complaint

As a preliminary matter, Defendants' motions to dismiss the original Complaint and Southern Health's motion for a more definite statement filed in response to Plaintiff's original Complaint need attention.  (Docs. 5-8).  Since Plaintiff's Amended Complaint supersedes the former pleading, the pending motions to dismiss the original Complaint and Southern Health's motion for a more definite statement are moot.  *See Fuller v. SunTrust Banks, Inc.*, Civil Action No. 1:11–CV–784–ODE, 2012 WL 1432306, at *15 n.5 (N.D. Ga. Mar. 20, 2012) ("Plaintiff's Amended Complaint … supercedes the former pleading and moots the pending motions to dismiss the original complaint.").  Accordingly, the undersigned **RECOMMENDS** that Defendants' motions to dismiss the original

Complaint and Southern Health's motion for a more definite statement (Docs. 5, 6, 7 & 8) be **DENIED as moot**.

## II.    Motions To Dismiss The Amended Complaint

Before addressing the motions challenging Plaintiff's Amended Complaint, it is worth observing that the Amended Complaint is a "typical 'shotgun' pleading" of the type condemned by the Eleventh Circuit. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 (11th Cir. 2010).  Plaintiff sets forth seven "Causes of Action," each of which "repeats and realleges each and every allegation" in the preceding paragraphs of the Amended Complaint.  (*See generally* Am. Compl., Doc. 11).  Having all of her allegations and preceding claims incorporated into each subsequent claim makes determining which particular factual allegations might plausibly support each claim a difficult task.

### A.  Motion to Dismiss Standard

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* FED. R. CIV. P. 8(a)(2). That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To state a claim that can survive a motion to dismiss, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. A complaint is not sufficient "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). To be plausible, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Boyd v. Peet*, 249 Fed. Appx. 155, 157 (11th Cir. 2007) (unpublished decision) (affirming the district court's order granting a motion for judgment on the pleadings and explaining that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed").

### B. Title VII (Counts I, II, III)

Plaintiff alleges Title VII claims against each Defendant. These are considered below in turn.

### 1. Plaintiff's Title VII claims against Dr. Craig

In his motion to dismiss, Dr. Craig asserts that there is no individual liability under Title VII and therefore Plaintiff's Title VII claims against him must be dismissed.  (*See* Doc. 17-1 at 3).  The Eleventh Circuit has repeatedly recognized that "[t]here is no individual liability under Title VII."  *Keaton v. Cobb County*, 545 F. Supp. 2d 1275, 1315 (N.D. Ga. 2008); *see also Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) ("[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company."); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are similarly inappropriate. The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act.").

In response, Plaintiff admits that she was "directly employed by Southern Health" but she contends that "there is insufficient evidence to establish that Dr. Craig is not properly named as a party in [her] Title VII claims."  (Doc. 22 at 3). This contention misses the point and impermissibly places the burden on Dr. Craig to prove that he was not her employer under Title VII.  At this stage of the proceedings, Plaintiff was required to allege facts that plausibly support an inference that Dr. Craig was her employer to state a claim against him under Title

VII.  She did not do so.  Although Plaintiff alleged that Dr. Craig was her employer, (Doc. 11 at ¶ 7), she did so only in the most conclusory fashion.  In fact, other allegations flatly suggest Dr. Craig was not her employer.  For example, she claims she was "employed by Defendant Southern Health Corporation whose primary responsibilities [were] to Defendant Dr. James Craig's Family Practice located within facilities maintained by Southern Health Corporation." (*Id.* at ¶ 18).  Elsewhere in the Complaint, she alleges that, like herself, Dr. Craig was employed by Southern Health.  (*Id.* at ¶ 57).  Under these circumstances, she has provided no basis for a reasoned conclusion that Dr. Craig was her employer.  *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n. 10 (11th Cir.1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.").

Accordingly, because Plaintiff has not alleged facts that support a conclusion that Dr. Craig was her employer for Title VII purposes, and with there being no individual liability under Title VII, the undersigned **RECOMMENDS** that Dr. Craig's motion to dismiss be **GRANTED** as to all of Plaintiff's Title VII claims.

### 2. Plaintiff's Title VII Claims Against Southern Health

As an initial matter, it is worth emphasizing that Southern Health has not moved to dismiss Plaintiff's Title VII sexual discrimination (Count I) or retaliatory termination (Count III) claims.  (*See* Doc. 19-1 at 3).  Therefore, the only Title VII

claim which warrants discussion is Plaintiff's sexual harassment claim (Count II).

In moving to dismiss, Southern Health argues that Plaintiff's Title VII sexual harassment claim fails to state a claim for relief because she has not sufficiently alleged a hostile work environment.   (*See* Doc. 19-1 at 3).   In opposition, Plaintiff points out she alleged a "pattern of on-going and persistent harassment, which included lewd comments, sexual touching, and displays of sexual photographs."  (Doc. 24 at 5).

Title VII provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).   Although "sexual harassment" is not explicitly mentioned in Title VII, "it has long been settled that the statutory phrase 'terms, conditions, or privileges of employment' includes within its scope a discriminatorily hostile or abusive environment."  *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) ("Title VII does not mention sexual harassment.  Nevertheless, the Supreme Court and this Court long have recognized that the phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men

and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

To establish a hostile work environment sexual harassment claim under Title VII, the plaintiff must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza*, 195 F.3d at 1245. "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Id.* at 1246. There is no dispute, at this stage of the litigation, that Plaintiff has alleged that *she* found the environment hostile.

The issue is whether she has alleged facts that satisfy the objective component. The factors utilized by courts to evaluate the objective reasonableness of an employee's perception that conduct is so severe or pervasive as to alter the terms and conditions of employment include "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or

humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

Plaintiff alleges that while she worked with Dr. Craig, he and nurse supervisor Holmes were engaged in an open sexual relationship. (Doc. 11 at ¶ 23). The Amended Complaint states that Dr. Craig showed off pictures of himself "dressed only in his underwear" and that he displayed panties belonging to Ms. Holmes that were inscribed with the phrase "I love Dr. Craig." (*Id.*). Plaintiff claims she was required to cover patients for Dr. Craig while he had sex with Ms. Holmes at the office during work hours. (*Id.*). She further alleges she was subjected to pervasive sexual comments, innuendo, and lewd gestures while working at Dr. Craig's office. (*Id.* at ¶ 22). In particular, she claims Dr. Craig rubbed Ms. Holmes between the legs and engaged in other sexual touching in Plaintiff's presence. (*Id.* at ¶ 23). She also claims he called her a whore. (*Id.*). And, finally, Dr. Craig allegedly "teased Plaintiff about being a prude, and suggested that she should be open to having a sexual affair despite being married." (*Id.*). In light of the foregoing, the undersigned concludes that Plaintiff has alleged sufficient facts to state a plausible claim for sexual harassment.

The primary argument Southern Health raises in its motion to dismiss is that the actions alleged by Plaintiff do not rise to the level of a hostile work

environment.  (*See* Doc. 19-1 at 3-5).  The doctor in charge allegedly had sex with a nurse supervisor at work during office hours while requiring Plaintiff to cover for patients.  When these allegations are considered in connection with alleged display of photos of Dr. Craig in his underwear, a display of panties inscribed with "I love Dr. Craig," and Dr. Craig's alleged suggestion that Plaintiff should be open to having an affair, Plaintiff has met her burden at the this stage of the litigation.

Accordingly, the undersigned **RECOMMENDS** that Southern Health's motion to dismiss Plaintiff's Title VII sexual harassment claim be **DENIED**.

### 3. Plaintiff's Title VII Claims Against SunLink

SunLink, the parent of Southern Health, asserts "it is entitled to dismissal of Plaintiff's Title VII claims against it because [it] was not named in Plaintiff's original EEOC Charge of Discrimination."  (Doc. 18-1 at 3).  "Although the Eleventh Circuit liberally construes the naming requirement of Title VII, a subsequent civil action may not be brought against an individual not named in an EEOC charge."  *Frazier v. Smith*, 12 F. Supp. 2d 1362, 1368 (S.D. Ga. 1998).  That naming precondition "serves to notify the charged party of the allegation and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII."  *Virgo v. Riviera Beach Assoc.*, *Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994).  "Only where the purposes of Title VII have been fulfilled may such an action be brought against an individual who was not

named in the EEOC charge." *Frazier*, 12 F. Supp. 2d at 1369.  In determining

whether the purposes of Title VII are met, this Court considers several factors,

including:

> (1) the similarity of interest between the named party and the
> unnamed party; (2) whether the plaintiff could have
> ascertained the identity of the unnamed party at the time the
> EEOC charge was filed; (3) whether the unnamed parties
> received adequate notice of the charges; (4) whether the
> unnamed parties had an adequate opportunity to participate
> in the reconciliation process; and (5) whether the unnamed
> party actually was prejudiced by its exclusion from the
> EEOC proceedings.

*Virgo*, 30 F.3d at 1359.  "The burden is on the plaintiff to explain why the

individual was not named and to demonstrate that the purposes of Title VII have

been satisfied regardless of the omission." *Frazier*, 12 F. Supp. 2d at 1369 (citing

*Hulsey v. Gunn*, 905 F. Supp. 1067, 1071 (N.D. Ga. 1995)).

SunLink claims Plaintiff "has not and cannot demonstrate that SunLink

received adequate notice of the EEOC charge or had the opportunity to participate

in the EEOC investigation" and that "Plaintiff has provided no justification for her

failure to name [SunLink in her EEOC charge] at the outset of the EEOC

proceeding." (Doc. 18-1 at 5).

In opposition, Plaintiff contends SunLink was placed sufficiently on notice

by Plaintiff's initial EEOC charge to make it a proper party to this action.  To

support this contention, Plaintiff argues that there is a sufficient similarity of

interest between SunLink and Southern Health because SunLink is the parent corporation of Southern Health.  (Doc. 23 at 4).  Additionally, Plaintiff asserts "SunLink has not alleged that it did not receive notice of the claim, that it did not have an adequate opportunity to participate in the EEOC process, nor that it was prejudiced by its exclusion from those proceedings." (*Id.*).

Plaintiff misapprehends the burdens placed on the respective parties at this stage of the litigation.  Plaintiff contends, without citing authority, that SunLink must show that it did not receive notice of the claim.  To the contrary, Plaintiff must "explain why the individual was not named and to demonstrate that the purposes of Title VII have been satisfied regardless of the omission." *Frazier*, 12 F. Supp. 2d at 1369.  Rather than make any effort to do so, Plaintiff has merely argued that as Southern Health's parent, SunLink *must* have known about the EEOC charge.  To adopt such a rule would create the ability to sue multiple vertically-related business entities with a single EEOC charge.  This result is at odds with governing law.  It appears that for a charge to be applied to an unnamed parent, that parent must have either had actual notice or have actively participated in the EEOC process. *See DiGiro v. Pall Corp.*, 993 F. Supp. 1471, 1475 (M.D. Fla. 1998) (denying parent corporation's motion to dismiss *pro se* plaintiff's complaint where attorney for parent corporation appeared before the EEOC in an attempt to conciliate on behalf of a named defendant); *see also Evans v. Meadow*

*Steel Products, Inc.*, 572 F. Supp. 250, 255 (N.D. Ga. 1983) (denying dismissal for failure to name in EEOC where parent corporation received notice of the charge). Plaintiff has not alleged SunLink had actual notice of the EEOC charge or that it participated in the process.

Thus, because Plaintiff has not demonstrated that the purposes of Title VII have been satisfied as to SunLink, the undersigned **RECOMMENDS** that SunLink's motion to dismiss be **GRANTED** as to all of Plaintiff's Title VII claims.

### C. State Law Claims

Plaintiff also brings a variety of state law claims against all Defendants.

### 1. Intentional Infliction of Emotional Distress (Count IV)

Plaintiff alleges that all Defendants are liable for intentional infliction of emotional distress. The undersigned will consider whether Plaintiff has stated a claim against each Defendant in turn.

### a. Plaintiff's claim against Dr. Craig

To prevail on a claim of intentional infliction of emotional distress, Plaintiff must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *See Hendrix v. Phillips*, 207 Ga.App. 394, 428 S.E.2d 91, 92 (1993). Whether a

16

defendant's actions rose to the requisite level of outrageousness is a question of law to be determined by the court. *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 409 S.E.2d 835, 838 (1991). "The burden on a plaintiff asserting a claim for intentional infliction of emotional distress is heavy." *Durley v. APAC, Inc.,* 236 F.3d 651, 658 (11th Cir. 2000).

Among the factors to be considered are "the existence of a relationship in which one person has control over another; the actor's awareness of the victim's particular susceptibility; and the severity of the resultant harm." *Trimble v. Circuit City Stores, Inc.*, 220 Ga.App. 498, 469 S.E.2d 776, 778 (1996) (internal citations omitted). Georgia courts have recognized that "the existence of a special relationship in which one person has control over another, as in [an] employer-employee relationship, may produce a character of outrageousness that might otherwise not exist." *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga.App. 230, 232, 718 S.E.2d 88, 90 (2011) (citation omitted). Even where there is an employment relationship a "major outrage in the language or conduct complained of is essential to the tort." *Smith v. Akstein,* 408 F. Supp. 2d 1309, 1336 (N.D. Ga. 2005). To sustain a claim, the "actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff." *Id.*, 408 F. Supp. at 1335.

The allegations present here do not meet the demanding burden placed upon a Plaintiff to plead claim of intentional infliction of emotional distress. In

particular, the allegations do not satisfy the "extreme and outrageous" element of her claim.   Plaintiff identifies two types of conduct to try to show that the challenged conduct was outrageous.  On the one hand, she claims that Craig falsely accused her of having an affair with a patient and abandoning her job duties so that she could be fired under false pretenses.  (*See* Am. Compl. at ¶ 54).  This category of conduct fails because an at-will employee may not maintain a claim for intentional infliction of emotional distress for her termination.  *See Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1299 (N.D. Ga. 2001) ("Where, however, the intentional infliction of emotional distress claim directly stems from the termination [of an at-will employee] and is clearly not independent of the severance of employment, then plaintiff's claim should be dismissed.") (internal quotation omitted).

Plaintiff's other allegations are related to the sexually-charged environment at the office.  She alleges that Dr. Craig, the supervisor over the office, forced Plaintiff to cover for patients while Dr. Craig and Ms. Holmes engaged in sexual acts in the office during work hours; that he displayed photos of himself wearing only his underwear and that he showed off panties belonging to Ms. Holmes inscribed with "I love Dr. Craig;" that he emailed provocative pictures and used lewd and sexually charged language; and, finally, that he teased Plaintiff for being a prude and encouraged her to have an extra-marital affair. (*See* Am. Compl. at ¶

22-23).

Even in the employment context, the law requires "major outrage" for the tort to be complete. *Smith*, 408 F. Supp. 2d at 1336. Where a superior engages in both direct abuse and unwanted touching, the requisite outrage has been found. *See Trimble*, 469 S.E.2d at 777–78 (finding that the plaintiff had stated a claim for intentional infliction of emotional distress based on allegations that the plaintiff's supervisor sexually harassed her by hugging and rubbing against her, ridiculing her in front of other employees, and placing his hands down her skirt, and that after she complained of the harassment, the defendant continued the pattern of harassment by "deliberately altering and removing her sales figures upon which commissions were figured, requiring [her] to work extremely long hours with no days off, ordering her to lift television consoles in excess of 25 pounds, refusing to compensate her for overtime, and forcing her to perform price comparisons at competitors more often than other sales personnel, reducing her volume of commission sales").

Not all acts of unwanted physical contact of a sexual nature are outrageous enough to state a claim of intentional infliction of emotional distress, however. *See MARTA v. Mosley*, 280 Ga. App. 486, 491 (2006) (physical precedent only) (plaintiff failed to set out a prima facie case on the element of outrageousness based on evidence that her work supervisor pulled her toward him, so that her

backside was compressed against the front of his body, rubbed his hand along her side between her waist and underarm, squeezed her waist, moaned and then smiled; the defendant's conduct was an isolated instance that lasted two seconds, occurred in public and in the presence of other employees, and was not physically threatening).  Statements and innuendo alone have been held insufficient to state a claim.  *Hendrix v. Phillips,* 207 Ga.App. 394, 394–395 (1993) (no prima facie case on the element of outrageousness where co-worker showed plaintiff a hole in the crotch of his pants and asked if she would like to staple it closed and made other sexually offensive remarks and gestures).

For sexual conduct in the office setting to meet the demanding standard of outrageousness, it must be truly extreme.  By way of example, a plaintiff who is subjected to seeing a supervisor's genitals stands a fighting chance of showing the conduct is outrageous.  *See, e.g., Mangrum v. Republic Indus.*, *Inc.,* 260 F. Supp. 2d 1229, 1256 (N.D. Ga. 2003) *aff'd,* 88 Fed. Appx. 390 (11th Cir. 2003) (act of allegedly exposing himself to plaintiff was "*arguably* extreme and outrageous enough to meet the Georgia standard" (emphasis added)); *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 232 (2011) (refusing to say that act of dentist masturbating in a public hallway of his office was *not* outrageous as a matter of law, but finding claim failed due to lack of severe emotional distress (emphasis added)).

Viewing Plaintiff's allegations against this backdrop of authority exposes their shortcomings. Plaintiff alleges specifically that Dr. Craig and Ms. Holmes engaged in sex at the office, but she does not allege that she heard or viewed that activity. Furthermore, although she refers to Dr. Craig rubbing Ms. Holmes between the legs, she does not allege that Dr. Craig ever touched *Plaintiff.* (*See* Doc. 11 at ¶ 23a ("Dr. Craig rubbed Ms. Holmes between the legs and engaged in other sexual touching with her in the office in Plaintiff's presence")). Under these circumstances, the only sexual behavior allegedly directed towards Plaintiff is what she describes as "constant sexual comments, innuendo and teasing." (*Id.* at ¶ 24.).

The undersigned finds that the acts alleged here fall short of what is required to meet the demanding standard of outrageousness to state a claim for intentional infliction of emotional distress. Liability under this theory of recovery attaches only where "the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fayette Family Dental Care, Inc.*, 312 Ga. App at 232. Plaintiff has alleged that Dr. Craig and Ms. Holmes had sex at the office and that he told Plaintiff she should be open to having an affair – a statement that could be understood as an invitation for Plaintiff to join them. These allegations, though distasteful, especially considering the setting, simply do not rise to the level of outrageousness that is required to state a claim for

intentional infliction of emotional distress, and for that reason it is **RECOMMENDED** that Craig's motion to dismiss that claim be **GRANTED.**

### b. Plaintiff's claim against Southern Health

Because Plaintiff has failed to state a claim for intentional infliction of emotional distress against Dr. Craig, the undersigned **RECOMMENDS** that Southern Health's motion to dismiss Plaintiff's intentional infliction of emotional distress claim be **GRANTED**.

### c. Plaintiff's Claim against SunLink

Plaintiff's claim against SunLink for intentional infliction of emotional distress is similar to the one she raises against Southern Health.  (*See* Am. Compl. at ¶¶ 57, 58, 59).   Because Plaintiff has failed to state a claim for intentional infliction of emotional distress against Dr. Craig, the undersigned **RECOMMENDS** that SunLink's motion to dismiss be **GRANTED** as to Plaintiff's claim for intentional infliction of emotional distress against SunLink.

### 2. Negligent Hiring, Retention, and Supervision (Count V)

Plaintiff has brought claims for negligent hiring, retention, and supervision against all Defendants.

### a. Plaintiff's claims against Dr. Craig

In her Amended Complaint, Plaintiff alleges that Dr. Craig "breached [his] duty to properly hire, retain, and provide proper supervision over health care

personal [sic] when [he] allowed an unlicensed professional, Meredith Holmes, to perform the duties of a nurse …." (Am. Compl. at ¶ 63). According to Plaintiff, hiring Ms. Holmes caused her to suffer special damages, including loss of wages, benefits of employment, and medical expenses because Ms. Holmes frequently committed errors with patients which caused Plaintiff stress and which also caused Dr. Craig to blame Plaintiff for Ms. Holmes's errors. (*Id.* at ¶¶ 65-66).

In opposition, Dr. Craig argues that Plaintiff's claims concerning Ms. Holmes fail as a matter of law because there is no causal connection between "Ms. Holmes' alleged employment incompetency (lack of nursing license) and Plaintiff's alleged injury (lost wages, benefits of employment, and medical expenses)." (Doc. 19-1 at 9). This point is well taken.

"A claim for negligent hiring, retention or supervision brought pursuant to Georgia law arises when an employer negligently hires, retains or supervises an employee and that employee subsequently harms the plaintiff." *Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001) (internal quotation marks omitted). "To establish a negligent retention or supervision claim, the plaintiff must show that the employer knew or should have known it was 'foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff.' " *Dehaan v. Urology Center of Columbus, LLC*, No. 4:12–CV–06 (CDL), 2012 WL 1300554, at *2 (M.D. Ga. Apr. 16, 2012)

(quoting *Drury v. Harris Ventures, Inc.*, 302 Ga.App. 545, 548, 691 S.E.2d 356, 359 (Ga. Ct. App. 2010) (internal quotation marks omitted)).  Thus, the relevant question "is whether [Dr. Craig] knew or in the exercise of ordinary care should have known that [Ms. Holmes], the employee [he] hired and retained to perform [nursing duties], was unsuitable for that position because [she] posed a reasonably foreseeable risk of personal harm to [nurses] like [Plaintiff]."  *Munroe v. Universal Health Servs., Inc.*, 596 S.E.2d 604, 607 (Ga. 2004).

Here, the undersigned finds that Plaintiff's claim against Dr. Craig fails as a matter of law.  "A claim of negligent retention [supervision, or hiring] is derivative of an underlying tort claim."  *Canty v. Fry's Electronics, Inc.*, 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010).  Plaintiff does not identify the underlying tort forming the basis of her negligent hiring, retention, and supervision claim other than to say that Ms. Holmes "frequently made errors and omissions with patients at Dr. Craig's office"  (Am. Compl. at  ¶ 65), nor does she plead or argue that such conduct amounted to any recognized tort under Georgia law.  *Canty*, 736 F. Supp. 2d at 1380 (dismissing plaintiff's negligent supervision claim where plaintiff did not plead a basis for the underlying tort).  Furthermore, while Plaintiff asserts in her response in opposition to Dr. Craig's motion to dismiss that Ms. Holmes's lack of a nursing license contributed to a hostile work environment (*see* Doc. 23 at 11), Plaintiff has failed to allege any facts to suggest a causal connection between Ms.

24

Holmes's lack of a nursing license and Plaintiff's injuries from a hostile work environment, nor has she offered any basis to conclude that Dr. Craig knew or should have known that Ms. Holmes's lack of a nursing license posed a foreseeable risk of personal harm to Plaintiff by reason of a hostile work environment. *See Breland v. City of Centerville, Georgia*, Civil Action No. 5:07-cv-27(CAR), 2008 WL 2233595, at *6 (M.D. Ga. May 28, 2008) (There must be evidence of "a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff … The employer is subject to liability only for such harm as is within the risk.") (quoting *Munroe*, 596 S.E.2d at 606).

Accordingly, the undersigned **RECOMMENDS** that Dr. Craig's motion to dismiss be **GRANTED** as to Plaintiff's claim for negligent hiring, retention, and supervision.

### b. Plaintiff's claims against Southern Health

Plaintiff appears to allege two separate theories of negligent hiring, retention, and supervision against Southern Health.  First, as she did with respect to Dr. Craig, Plaintiff asserts that Southern Health "breached [its] duty to properly hire, retain, and provide proper supervision over health care personal [sic] when [it] allowed an unlicensed professional, Meredith Holmes, to perform the duties of a nurse …."  (Am. Compl. at ¶ 63).  According to Plaintiff, hiring Ms. Holmes

caused her to suffer special damages, including loss of wages, benefits of employment, and medical expenses because Ms. Holmes frequently committed errors with patients which caused Plaintiff stress and which also caused Dr. Craig to blame Plaintiff for Ms. Holmes's errors.  (*Id.* at ¶¶ 65-66).  Second, Plaintiff alleges that Southern Health breached its duty to supervise individuals when it "allow[ed] the relationships between Dr. Craig and Meredith Holmes to continue," "fail[ed] to properly investigate Plaintiff's claims of sexual discrimination and harassment, and tolerat[e]d the intimidating, hostile, and offensive work environment at Dr. Craig's."  (*Id.* at ¶ 64).  Plaintiff further alleges that Southern Health was aware of the relationship between Dr. Craig and Holmes.  (*Id.* at ¶ 25, 26)

The undersigned notes that Southern Health does not discuss Plaintiff's claim that it breached its duty to supervise individuals in its employ by allowing the relationships between Dr. Craig and Ms. Holmes to continue, failing to properly investigate Plaintiff's claims of sexual discrimination and harassment, and tolerating an intimidating, hostile, and offensive work environment at Dr. Craig's office.  (*See* Doc. 19-1 at 11).  For that reason, that aspect of the claim may proceed.

As for Plaintiff's claim that Southern Health negligently hired, retained, and supervised Ms. Holmes because her lack of a nursing license caused Plaintiff harm,

for the same reasons discussed above in regard to Dr. Craig, the undersigned finds that such a claim fails to state a claim for relief.

Accordingly, the undersigned **RECOMMENDS** that Southern Health's motion to dismiss Count V be **GRANTED** as to Plaintiff's claim that Southern Health negligent hired, retained, and supervised Ms. Holmes because she lacked a nursing license.  To the extent Count V is based on a breach of a duty to supervise by knowingly allowing the relationship between Dr. Craig and Ms. Holmes to continue, failing to properly investigate Plaintiff's claims of sexual discrimination and harassment, and tolerating an intimidating, hostile, and offensive work environment at Dr. Craig's office, it is recommended the claim should be allowed to proceed because Southern Health has not identified any grounds for dismissal.

### c. Plaintiff's claims against SunLink

Plaintiff's claims against SunLink for negligent hiring, retention, and supervision are similar to the ones she raises against Southern Health.  (*See* Am. Compl. at ¶¶ 63, 64).  Plaintiff does not allege, however, any facts that would tend to establish that SunLink employed Dr. Craig or Ms. Holmes.  Therefore, the undersigned **RECOMMENDS** that SunLink's motion to dismiss be **GRANTED** as to Plaintiff's claims for negligent hiring, retention, and supervision.

### 3. Tortious Interference (Count VI)

#### a. Plaintiff's claims against Dr. Craig

27

In her Amended Complaint, Plaintiff alleges two acts of tortious interference against Dr. Craig.  First, Plaintiff claims that Dr. Craig's "conduct in reporting a false story to Defendant Southern Health Corp. and other actions resulting in Plaintiff's termination constitutes tortious interference with Plaintiff's employment with Defendant Southern Health Corp."  (Am. Compl. at ¶ 73).  Second, Plaintiff alleges that "[Dr. Craig] intentionally and improperly interfered with the potential future employment opportunities and business relationships between Plaintiff and the general public."  (*Id.* at ¶ 74).

Under Georgia law, tortious interference claims, whether for interference with contractual relations or business relations, require the plaintiff to prove the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and  with malice with the intent to injure; (3) the defendant   induced     a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious  conduct  proximately  caused  damage  to  the plaintiff.

*Kirkland v. Tamplin*, 285 Ga.App. 241, 243 645 S.E.2d 653, 655-656 (2007).

Dr. Craig does not address Plaintiff's claim that he tortiously interfered with Plaintiff's employment with Southern Health.  (Doc. 17-1 at 7-10).  While there may be viable arguments for dismissing of this claim against Dr. Craig, the undersigned will not address it because Dr. Craig did not address it.

As for Plaintiff's allegation that Dr. Craig improperly interfered with potential employment opportunities and business relationships between Plaintiff and the general public, the undersigned concludes that such an allegation does not state a claim upon which relief can be granted under the pleading standard of Rule 8, *Twombly* and *Iqbal*. Plaintiff has not alleged any specific contractual or business relationship that Dr. Craig improperly interfered with, nor has she presented the Court with any "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, "to establish a cause of action for interference with prospective business relations, [a] plaintiff must demonstrate that absent the interference, those relations were reasonably likely to develop in fact." *Magnum v. Republic Industries, Inc.*, 260 F. Supp. 2d 1229, 1257 (N.D. Ga. 2003) (citing *Renden, Inc. v. Liberty Real Estate L.P.*, 213 Ga.App. 333, 334-335, 444 S.E.2d 814 (Ga. Ct. App. 1994). Here, Plaintiff has not presented any facts to suggest that the prospective business relations would have developed absent the purported interference from Dr. Craig.

Accordingly, the undersigned **RECOMMENDS** that Dr. Craig's motion to dismiss be **GRANTED** as to Plaintiff's claim that Dr. Craig interfered with potential future employment opportunities and business relationships between Plaintiff and the general public, but notes that Dr. Craig did not move to dismiss

the claim to the extent it is directed to his alleged interference with Plaintiff's employment with Southern Health.

### b. Plaintiff's tortious interference claims against Southern Health

In her Amended Complaint, Plaintiff asserts that "[Southern Health] intentionally and improperly interfered with the potential future employment opportunities and business relationships between Plaintiff and the general public." (Am. Compl. at ¶ 74).  In particular, Plaintiff contends that she "applied for but was unable to obtain another job in Gilmer County after her termination" and, "upon information and belief, [Southern Health] … interfered with and prevented Plaintiff from obtaining another job in the local market."  (*Id.* at ¶ 77).

For the same reasons discussed above in regard to Dr. Craig, the undersigned finds that Plaintiff has not alleged sufficient facts to state a plausible claim for tortious interference against Southern Health.  While Plaintiff argues that she has alleged a claim for tortious interference by asserting that Southern Health interfered and prevented Plaintiff from obtaining a job in Gilmer County (*see* Doc. 24 at 8), Plaintiff's argument is unconvincing as she still has provided no allegations concerning a specific contractual or business relationship, allegations of how Southern Health interfered with those purported relationships, or allegations of whether those relationships were likely to develop in fact.  *See Magnum*, 260 F. Supp. 2d at 1257.

Accordingly, the undersigned **RECOMMENDS** that Southern Health's motion to dismiss Plaintiff's claims for tortious interference be **GRANTED**.

### c. Plaintiff's claims against SunLink

Plaintiff's claims against SunLink for tortious interference are identical to the ones she raises against Southern Health. (*See* Am. Compl. at ¶ 74). Therefore, for the same reasons discussed above in regard to Southern Health, the undersigned **RECOMMENDS** that SunLink's motion to dismiss be **GRANTED** as to Plaintiff's claims for tortious interference.

### 4. Defamation (Count VII)

Plaintiff alleges defamation claims against all three defendants.

### a. Plaintiff's claims against Dr. Craig

Dr. Craig contends Plaintiff's defamation claim should be dismissed for two reasons. First, Dr. Craig argues Plaintiff's claims should fail because she has not "alleged with specificity what, if any, special damages she has incurred." (Doc. 19-1 at 12). Second, Dr. Craig claims that, to the extent Plaintiff contends she was not required to plead special damages because she asserts a claim of defamation *per se*, Plaintiff has not and cannot plead the facts necessary for a slander *per se* claim. (*Id.* at 13). More specifically, Dr. Craig asserts that none of the alleged defamatory statements reference Plaintiff's trade or profession. (*Id.* at 13).

To establish a cause of action for defamation, "a plaintiff must submit

31

evidence of (1) a false and defamatory statement about [herself]; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words 'injurious on their face.' " *Chaney v. Harrison & Lynam, LLC*, 308 Ga.App. 808, 811, 708 S.E.2d 672, 676 (2011) (citing *Lewis v. Meredith Corp.*, 293 Ga.App. 747, 748(1), 667 S.E.2d 716, 718 (2008)).

A statement may be slanderous per se "if it imputes to another a crime punishable by law, charges a person with having some contagious disorder or with being guilty of some debasing act which may exclude her from society, or makes charges against another in reference to her trade, office or profession." *Webster v. Wilkins*, 217 Ga.App. 194, 196, 456 S.E.2d 699, 701 (1995). Similarly, "[l]ibel per se consists of a charge that one is guilty of a crime, dishonesty, or immorality." *Morrison v. Hayes*, 176 Ga.App. 128, 129, 335 S.E.2d 596, 597 (1985).

Plaintiff alleges in her Amended Complaint that Dr. Craig made several statements that directly impacted her trade and her ability to obtain employment. (*See* Am. Compl. at ¶ 83). Specifically, Plaintiff asserts Dr. Craig "fabricated a basis for Plaintiff's termination from [Southern Health], communicated to the general public the false allegations that Plaintiff had an affair with a patient, falsely alleged that she disclosed HIPPA privileged information, and that she abandoned her nursing job." (*Id.* at ¶ 82). Plaintiff further alleges that Dr. Craig "reported

this fabricated affair to a patient, to Mike Watkins, a Physician's Assistant at the office, to other staff at his office, administrators within [Southern Health], and others within the general public." (*Id.* at ¶ 84).

The undersigned finds that such allegations are sufficient to state a plausible claim for defamation. *See Atlanta Fiberglass USA, LLC v. KPI, Co., Ltd.*, Civil Action No. 1:11–CV–04367–RWS, 2012 WL 5945151, at *6 (N.D. Ga. Nov. 28, 2012) (denying motion to dismiss for failure to state a claim where plaintiff identified a specific defamatory statement and alleged that the statement was made to specific customers of plaintiff).

In addition, " 'Slander or oral defamation consists in [i]mputing to another a crime punishable by law,' OCGA § 51-5-4(a)(1), which adultery is." *Baskin v. Rogers*, 229 Ga.App. 250, 252, 493 S.E.2d 728, 730 (1997) (citing OCGA § 16-6-19). "Words charging a person with illegal sexual intercourse with another impute a crime and are actionable per se." *Id.* Consequently, Dr. Craig "[a]ccusing [Plaintiff] of having sexual relations with any person other than [her husband] constitutes slander per se, meaning no special damages nor malice need be shown." *Id.* Since Plaintiff has alleged that Dr. Craig falsely stated she had an affair with a patient, the defamation claim may proceed.

Accordingly, the undersigned **RECOMMENDS** that Dr. Craig's motion to dismiss Plaintiff's defamation claim be **DENIED**.

### b. Plaintiff's claims against Southern Health

Plaintiff alleges that "[Southern Health] continued to repeat … false and defamatory allegations to Plaintiff's future employers through termination paperwork and other means, as well as to the general public, resulting in Plaintiff being unable to obtain employment in the community." (Am. Compl. ¶ 85). The allegation that Southern Health repeated the falsehoods states a plausible claim for defamation. *See Ivester v. Coe*, 33 Ga. App. 620, 127 S.E. 790, 792 (1925) ("Talebearers are as bad as talemakers. Every repetition of a slander originated by a third person is a willful publication of it, rendering the person so repeating it liable to an action, and it is no defense that the speaker did not originate the slander, but heard it from another, even though he in good faith believed it to be true."). As Plaintiff has stated a claim for defamation against Dr. Craig, the allegation that Southern Health, her employer, repeated the false statements is sufficient at this stage of the litigation to state a claim. Accordingly, the undersigned **RECOMMENDS** that Southern Health's motion to dismiss be **DENIED** as to Plaintiff's claim for defamation.

### c. Plaintiff's claims against SunLink

In her Amended Complaint, Plaintiff does not identify what defamatory statements were allegedly made by *SunLink*, nor does she allege any facts concerning the circumstances under which *SunLink* made the statements. Instead,

she conclusorily asserts, "All Defendants continued to repeat these false and defamatory allegations to Plaintiff's future employers through termination paperwork and other means, as well as to the general public, resulting in Plaintiff being unable to obtain employment in the community."  (Am. Compl. at ¶ 85). Plaintiff has not alleged any facts that SunLink had any involvement in her employment, her termination, or in making statements about Plaintiff, defamatory or otherwise.   Her conclusory allegations that SunLink made "false and defamatory" statements about Plaintiff are simply "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (quotation omitted), and thus, Plaintiff has failed to state a defamation claim against Defendant SunLink. Therefore, the undersigned **RECOMMENDS** that SunLink's motion to dismiss be **GRANTED** as to Plaintiff's claim for defamation.

## CONCLUSION

It is **RECOMMENDED** that Defendants Dr. James Craig and SunLink's motions to dismiss (Docs. 5, 6) and Southern Health's partial motion to dismiss for failure to state a claim (Doc. 7) and motion for a more definite statement (Doc. 8) be **DENIED as moot**.

It is further **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's Amended Complaint be **GRANTED in part** and **DENIED in part**.  In particular, it is **RECOMMENDED** that Dr. Craig's motion to dismiss (Doc. 17)

be **GRANTED** as to Plaintiff's Title VII claims (Counts I, II, III), Plaintiff's claim for intentional infliction of emotional distress (Count IV), Plaintiff's claim for negligent hiring, retention, and supervision (Count V), and Plaintiff's claim for tortious interference as it relates to Dr. Craig's purported interference with potential future employment opportunities and business relationships between Plaintiff and the general public (Count VI).  It is **RECOMMENDED** that Dr. Craig's motion to dismiss (Doc. 17) be **DENIED** as to Plaintiff's claim for defamation (Count VII) and it is noted that Craig did not seek dismissal of Count VI for tortious interference to the extent Plaintiff alleged he interfered with her relationship with Southern Health.

Further it is **RECOMMENDED** that Southern Health's motion to dismiss Plaintiff's Amended Complaint (Doc. 19) be **GRANTED** as to Plaintiff's claim for intentional infliction of emotional distress (Count IV), her claim for negligent hiring, retention, and supervision of Ms. Holmes because of a lack of a nursing license (Count V), and her tortious interference claim (Count VI).   It is **RECOMMENDED** that Southern Health's motion to dismiss be **DENIED** as to Plaintiff's Title VII sexual harassment claim (Count II) and the defamation claim (Count VII).  The undersigned also notes that Southern Health did not move to dismiss Plaintiff's negligent hiring, retention, and supervision claim to the extent that it rests on Southern Health allegedly allowing the relationship between Dr.

Craig and Ms. Holmes to continue, failing to investigate Plaintiff's claims of sexual discrimination and harassment, and tolerating an intimidating, hostile, and offense work environment, and therefore, it is **RECOMMENDED** that that claim be allowed to proceed.

Finally, it is **RECOMMENDED** that SunLink's motion to dismiss (Doc. 18) be **GRANTED** on all counts.

Defendants' motion to stay discovery (Doc. 21) is **GRANTED**, and discovery is **STAYED** until the District Judge decides the pending motions to dismiss. If any claims survive this review, the parties are **DIRECTED** to file their Joint Preliminary Planning Report and Discovery Plan no later than **thirty (30)** days after the entry of an Order on Defendants' motion to dismiss, and the Court will then issue a Scheduling Order.

**It is so ORDERED, REPORTED, and RECOMMENDED** this 11th day of March, 2013.

  /s/  J. CLAY FULLER
J. CLAY FULLER
United States Magistrate Judge